1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHERRI SANDOVAL,

11             Plaintiff,                    No. CIV S-05-1532 DAD

12      vs.

13   MICHAEL J. ASTRUE,                      ORDER
     Commissioner of Social Security,[1]
14
               Defendant.
15   _____/

16             This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, the undersigned will affirm the decision of the

19   Commissioner of Social Security (Commissioner).

20                            **PROCEDURAL BACKGROUND**

21             Plaintiff Sherri Sandoval applied for Supplemental Security Income benefits under

22   Title XVI of the Social Security Act (the Act) in November 2001.  (Transcript (Tr.) at 68-76.)

23   The Commissioner denied plaintiff's application initially and on reconsideration.  (Tr. at 57-60,

24   _____

25        [1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
     Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
26   P. 25(d)(1).

                                              1

62-66.)  On July 14, 2003, pursuant to plaintiff's request, a hearing was held before an

administrative law judge (ALJ), at which plaintiff was represented by counsel.  (Tr. at 67, 333-

347.)  In a decision issued on August 4, 2003, the ALJ determined that plaintiff was not disabled.

(Tr. at 37-47.)  Plaintiff appealed the decision to the Appeals Council.  (Tr. at 31-36.)  The

Appeals Council vacated the decision on March 18, 2004, and remanded the case for further

proceedings and a new decision.  (Tr. at 292-95.)

On September 2, 2004, a new hearing was held, at which plaintiff was again

represented by counsel.  (Tr. at 347-64.)  In a decision issued on October 21, 2004, the ALJ

determined that plaintiff was not disabled.  (Tr. at 12-25.)  The following findings were entered:

> 1.  The claimant has not engaged in substantial gainful activity
> since the alleged onset of disability.
>
> 2.  The claimant's dysthymic disorder, anxiety disorder, and
> personality disorder are considered "severe" based on the
> requirements in the Regulations 20 CFR § 416.920(b).
>
> 3.  These medically determinable impairments do not meet or
> medically equal one of the listed impairments in Appendix 1,
> Subpart P, Regulation No.4.
>
> 4.  The undersigned finds the claimant's allegations regarding her
> limitations are not totally credible for the reasons set forth in the
> body of the decision.
>
> 5.  The claimant has the following residual functional capacity:  to
> perform unskilled work that involves working primarily with
> objects rather than people.
>
> 6.  The claimant has no past relevant work (20 CFR § 416.965).
>
> 7.  The claimant is a 'younger individual' (20 CFR § 416.963).
>
> 8.  The claimant has 'a limited education' (20 CFR § 416.964).
>
> 9.  The claimant has no exertional limitations (20 CFR § 416.945).
>
> 10.  Considering the range of work at all levels that the claimant is
> still functionally capable of performing, in combination with her
> age, education, and work experience, and using section 204.00 of
> the Medical-Vocational Guidelines as a framework for decision-
> making, the claimant is not disabled.

1    11.  The claimant was not under a "disability," as defined in the
     Social Security Act, at any time through the date of this decision
2    (20 CFR § 416.920(g)).

3  (Tr. at 24-25.)

4         On December 12, 2004, plaintiff requested review of the ALJ's October 21, 2004

5  decision.  (Tr. at 11.)  The Appeals Council declined review on June 1, 2005.  (Tr. at 6-10.)

6  Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in

7  this action on July 29, 2005.

8                                    **LEGAL STANDARD**

9         The Commissioner's decision that a claimant is not disabled will be upheld if the

10 findings of fact are supported by substantial evidence in the record as a whole and the proper

11 legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

12 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

13 The findings of the Commissioner as to any fact, if supported by substantial evidence, are

14 conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

15 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

16 Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson

17 v. Perales, 402 U.S. 389, 401 (1971)).

18        A reviewing court must consider the record as a whole, weighing both the

19 evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

20 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

21 of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

22 substantial evidence supports the administrative findings, or if there is conflicting evidence

23 supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

24 Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

25 improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

26 1335, 1338 (9th Cir. 1988).

                                           3

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances three main arguments in her motion for summary judgment.  First, plaintiff asserts that the ALJ's decision concerning residual functional capacity does not comport with law or the evidence.  Second, plaintiff maintains that the ALJ improperly rejected a treating physician's opinion by means of factual misstatement and legal error.  Third, plaintiff contends that the ALJ erred in rejecting the testimony of plaintiff and her witness.  The court addresses these arguments below, although not in the order in which plaintiff has presented them.

//////

## I. <u>Treating Physician's Opinions</u>

The court will first address whether the ALJ erred in his treatment of the opinions of David Smith, M.D., plaintiff's treating psychiatrist.  Dr. Smith treated plaintiff at the Sacramento County Mental Health Adult Psychiatric Support Services Clinic (APSS Clinic) between June 1999 and August 2004.  (<u>See</u> tr. at 197-232, 284-91, 307-21, 328-29.)

The treating physician opinion at issue is set forth in a two-page form titled "Medical Assessment of Ability to Do Work-Related Activities (Mental)."  (Tr. at 328-29.)  In the assessment, Dr. Smith indicated numerous serious limitations with respect to plaintiff's ability to engage in a host of work-related mental activities.[2]  With regard to the topic of making occupational adjustments, Dr. Smith assessed plaintiff's ability to follow work rules and relate to co-workers as fair (defined by the form as "seriously limited, but not precluded") and further assessed plaintiff's ability to deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, and maintain attention and concentration as poor or nonexistent (defined by the form as "no useful ability to function in this area").  Dr. Smith concluded that plaintiff "has consistently been depressed in spite of treatment now for the past 3 years" and indicated that plaintiff was taking Prozac at that time, having failed to improve while on three other medications.  (Tr. at 328.)  With regard to the topic of making performance adjustments, Dr. Smith found that plaintiff's ability was poor or nonexistent in all categories.  He indicated that his conclusions were supported by plaintiff's "[d]epression with resulting low energy and slowed cognition."  With regard to the topic of making personal and social adjustments, Dr. Smith assessed plaintiff's ability to maintain personal appearance as fair but

---

[2]  The assessment, which does not bear a date, is marked Exhibit 14F.  The transcript of the hearing held on September 2, 2004, reflects that Exhibit F contained 12 documents at the time of the hearing.  (Tr. at 349.)  Plaintiff's attorney indicated at the end of the hearing that additional documents would be submitted.  (Tr. at 363-64.)  The ALJ's October 21, 2004 decision cites Exhibit 13F (tr. at 17) and a document not specifically cited as Exhibit 14F but described as "an undated medical source statement regarding the claimant's mental functioning" submitted by Dr. Smith (tr. at 18).

assessed her abilities to behave in an emotionally stable manner, to relate predictably in social

situations, and to demonstrate reliability were poor or non-existent.  He commented, however,

that plaintiff's depression "has previously responded to meds." (Tr. at 329.)  As for other work-

related activities, Dr. Smith wrote that plaintiff's depressed mood results in slowed mentation

and poor cognition and that she has failed numerous medications and numerous groups.  (Id.)

Plaintiff argues that these opinions are supported by the records of plaintiff's mental health

treatment included in the administrative record at pages 197 through 232, and pages 284 through

291.

It is well-established that the medical opinion of a treating physician is entitled to

special weight.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Embrey v. Bowen, 849

F.2d 418, 421 (9th Cir. 1988).  "As a general rule, more weight should be given to the opinion of

a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at

830.  "At least where the treating doctor's opinion is not contradicted by another doctor, it may

be rejected only for 'clear and convincing' reasons."  Id. (quoting Baxter v. Sullivan, 923 F.2d

1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion is contradicted by another

doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate

reasons' supported by substantial evidence in the record for so doing."  Id. (citing Murray v.

Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, the ALJ's discussion of Dr. Smith's assessment reflects that the ALJ gave

Dr. Smith's opinions serious consideration.  (Tr. at 21-23.)  In declining to accept Dr. Smith's

opinions concerning plaintiff's limitations, the ALJ found the extreme conclusions expressed in

the assessment to be unsupported by the rest of the evidence, including the doctor's own

treatment notes.  (Tr. at 22-23.)  The ALJ reasonably interpreted Dr. Smith's treatment notes and

other evidence in the record as reflecting that plaintiff exhibited "no more than mild restrictions

in activities of daily living related to a mental disorder," "moderate difficulties in maintaining

/////

1  social functioning," and "moderate limitations in maintaining concentration, persistence, or

2  pace." (Id. at 21.)

3          The ALJ cited particular medical records and reports that contradict the severe

4  limitations assessed by Dr. Smith. (See tr. at 21 (citing Exs. 11F, 4E, and 5E).) It is unnecessary

5  to repeat the ALJ's account of that evidence here. However, the undersigned will highlight a few

6  examples of substantial evidence supporting the ALJ's findings in this regard. The evidence of

7  record includes statements in 2002 by plaintiff, her husband, and her sister-in-law showing that

8  plaintiff performed household chores, cooked, used a computer, worked puzzles, did crafts, did

9  grocery shopping, helped her children, painted, did ceramics, drove a car, and handled her own

10  finances. (Tr. at 95-117.) This evidence does not paint nearly as severe a picture of plaintiff's

11  condition as the assessment of Dr. Smith in 2004. Likewise, Dr. Smith's own treatment records

12  from 2004 indicate a reasonable degree of success in managing plaintiff's depression with

13  medication. (Tr. at 308-21.) In particular, Dr. Smith's treatment notes on July 21, 2004, reflect

14  that plaintiff stated she was "doing ok" and reported that her mood was good on her current

15  medication, plaintiff had no side effects from Prozac on a dosage of 40 mg per day, plaintiff

16  expressed concern about postpartum depression, and Dr. Smith planned to increase her Prozac

17  dosage to 60 mg per day immediately after delivery, and plaintiff's overall response to the

18  medication was assessed as partial but adequate. (Tr. at 308.) The evidence also includes the

19  October 4, 2002 report from examining psychiatrist Pavitar S. Cheema, M.D., and the June 3,

20  2004 report from examining psychologist Michelina Regazzi, Ph.D., both of whom found

21  plaintiff to have some difficulties and limitations, but none as extreme as those found by Dr.

22  Smith. (Tr. at 257-59, 297-306.)

23          For all of these reasons, the court finds that the ALJ sufficiently stated specific

24  and legitimate reasons supported by substantial evidence in the record for not fully crediting the

25  Dr. Smith's 2004 assessment. See Bayliss v. Barnhart, 427 F.3d 1211, 1216-17 (9th Cir. 2005);

26  /////

1   Batson v. Comm'r, 359 F.3d 1190, 1195 (9th Cir. 2004);  Lester, 81 F.3d at 830-31.  Plaintiff's

2   argument to the contrary is unpersuasive.

3   **II.  Testimony of Plaintiff and Her Boyfriend**

4           Turning next to plaintiff's credibility argument, the court notes that it is well-

5   established that the determination of credibility is a function of the ALJ acting on behalf of the

6   Commissioner.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  Indeed, questions of

7   credibility and resolution of conflicts in the testimony are functions solely of the Commissioner.

8   Id.; Morgan, 169 F.3d at 599.  For this reason, an ALJ's assessment of credibility should, in

9   general, be given great weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).

10          Nonetheless, an ALJ's rejection of a claimant's testimony must be supported by

11   specific findings.  Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir.

12   1993) (citing Miller, 770 F.2d at 848).  Once a claimant has presented objective medical

13   evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to

14   the severity of his or her symptoms merely because the testimony is not corroborated by the

15   objective medical evidence.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Reddick v.

16   Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th

17   Cir. 1997).  Rather, "'the ALJ can reject the claimant's testimony about the severity of [his or]

18   her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Light, 119

19   F.3d at 792 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  See also Reddick,

20   157 F.3d at 722.  In evaluating a claimant's subjective testimony regarding the severity of his or

21   her symptoms, an ALJ may consider the presence or absence of supporting objective medical

22   evidence along with other factors.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991);

23   see also Smolen, 80 F.3d at 1285.  Ordinary techniques of credibility evaluation may be

24   employed, and the adjudicator may take into account prior inconsistent statements or a lack of

25   candor by the witness.  See Fair, 885 F.2d at 604 n.5.

26   /////

1    Testimony from lay witnesses, including a claimant's family and friends,

2    reflecting their observations of how the claimant's impairments affect his or her ability to work is

3    appropriate and must be considered.  Smolen, 80 F.3d at 1288 (citing 20 C.F.R. §

4    404.1513(e)(2)); Sprague, 812 F.2d at 1232.  In this regard, friends and family members who see

5    the claimant on a daily basis can often tell whether the claimant is suffering or merely

6    malingering, and are competent to testify as to their observations.  Regennitter v. Comm'r, 166

7    F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  The

8    ALJ must give reasons germane to each lay witness if he chooses to reject their testimony.

9    Regennitter, 166 F.3d at 1298.  The fact that a lay witness is a friend or relative of the claimant

10   cannot, by itself, be a ground for rejecting his or her testimony.  Id.; Smolen, 80 F.3d at 1289.

11   Nor does the fact that medical records do not corroborate the testimony provide a proper basis for

12   rejecting such testimony.  Smolen, 80 F.3d at 1289.

13   Here, plaintiff argues that the ALJ should have given "full weight" to the

14   testimony given by plaintiff and her boyfriend at the hearing on September 2, 2004.  While

15   plaintiff and her boyfriend testified that plaintiff is totally unable to work, the ALJ made specific

16   and detailed findings in not fully crediting that testimony.  The ALJ's decision summarizes the

17   testimony given by plaintiff and her boyfriend at the second administrative hearing, discusses all

18   the evidence in the record, and evaluates plaintiff's allegations and testimony regarding her

19   physical and mental condition at considerable length.  (See tr. at 18-23.)  The ALJ cites specific

20   reasons for not fully crediting the testimony of plaintiff, including, but not limited to, plaintiff's

21   previous testimony and her written statements concerning current and past activities inside and

22   outside the home.  (Tr. at 21-23.)  The ALJ also relied upon treatment notes, diagnostic studies,

23   and opinions of examining physicians that do not support the extreme extent of the physical and

24   mental limitations described by plaintiff at the administrative hearing on September 2, 2004.  In a

25   lengthy discussion of plaintiff's subjective complaints, the ALJ fairly characterized the record

26   and sufficiently stated specific, clear and convincing reasons for not fully crediting plaintiff's

1   testimony regarding the severity of her symptoms and their impact on her ability to work.  See

2   Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).  Therefore, plaintiff's argument to the

3   contrary must be rejected.

4          As noted above, plaintiff also argues that the ALJ erred in his treatment of the lay

5   testimony of her boyfriend.  That testimony essentially supports plaintiff's testimony regarding

6   the extent of her limitations.  In assessing the medical evidence as a whole and detailing his

7   reasons for not fully crediting plaintiff's testimony, the ALJ sufficiently provided specific

8   reasons for not fully crediting the boyfriend's testimony as well.  See Bayliss, 427 F. 3d at 1218

9   ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.");

10  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("In all, the ALJ at least noted arguably

11  germane reasons for dismissing the family members' testimony, even if he did not clearly link his

12  determination to those reasons.").

13  **III.  Plaintiff's Residual Functional Capacity**

14         Finally, plaintiff's general challenge to the ALJ's residual functional capacity

15  determination is unpersuasive as well.  A claimant's residual functional capacity is what the

16  claimant can still do despite his or her limitations and is an assessment based upon all relevant

17  evidence.  20 C.F.R. § 416.945(a); see also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir.

18  2001).  It is the duty of the ALJ to determine a claimant's residual functional capacity from the

19  record.  20 C.F.R. § 416.946(c); see also Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

20         Here, the medical records relied upon by the ALJ, including the treatment notes of

21  plaintiff's treating psychiatrist and the assessments of examining physicians, constitute

22  substantial evidence in support of the ALJ's residual functional capacity determination.  The ALJ

23  considered all of the evidence and reasonably found plaintiff to have the residual functional

24  capacity to perform unskilled work at all exertional levels.  Unskilled work is work which

25  requires little or no judgment to do simple duties that can be learned on the job in a short period

26  of time.  20 C.F.R. § 416.945.  The ALJ noted that such work involves working primarily with

1    objects rather than people.  (Tr. at 24-25.)  The medical evidence of record is consistent with the

2    assessment that plaintiff is able to perform such work.  Accordingly, the ALJ's residual

3    functional capacity assessment is supported by substantial evidence.

4            While plaintiff parses the ALJ's decision and discusses portions of the records in

5    some detail, it must be noted that the court's scope of review in considering decisions granting or

6    denying Social Security benefits is more limited than that suggested by plaintiff's argument.  See

7    Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979) ("Congress has

8    mandated a very limited scope of judicial review of the Secretary's decisions granting or denying

9    Social Security disability benefits.")  It is not the court's role to re-weigh the evidence or

10   substitute its own judgment for the Commissioner's.  Winans v. Bowen, 853 F.2d 643, 644-45

11   (9th Cir. 1987).  Further, if there is conflicting evidence supporting a finding of either disability

12   or nondisability, the ALJ may resolve the conflict between experts so long as there is "more than

13   one rational interpretation of the evidence."  Sprague, 812 F.2d at 1230.  See also Batson, 359

14   F.3d at 1193 (holding that, "if evidence exists to support more than one rational interpretation,

15   we must defer to the Commissioner's decision").

16           Here, as a general matter, the opinions of Dr. Smith, plaintiff's treating

17   psychiatrist, provide some evidence of disability.  However, the treatment notes of Dr. Smith and

18   other mental health professionals as well as the opinions of plaintiff's treating physician provide

19   substantial evidence of nondisability.  The ALJ discussed all of this evidence and set forth his

20   interpretation of that evidence in his decision.  The court finds the ALJ's interpretation of the

21   evidence to be a rational one.  See Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019

22   (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the

23   evidence, and if the evidence can support either outcome, the court may not substitute its

24   judgment for that of the ALJ.").  Thus, while perhaps a somewhat close case, in finding plaintiff

25   capable of performing work the ALJ properly discharged his responsibilities of determining

26   credibility and resolving any conflicts or ambiguities in the testimony.  See Magallanes v.

1  Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  For this reason as well, the court is unpersuaded by

2  plaintiff's challenge to the ALJ's residual functional capacity determination.

**CONCLUSION**

4           Accordingly, the court HEREBY ORDERS that:

5           1.  Plaintiff's motion for summary judgment is denied;

6           2.  Defendant's cross-motion for summary judgment is granted; and

7           3.  The decision of the Commissioner is affirmed.

8  DATED: March 9, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/sandoval1532.order